[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10786
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 10, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-14003-TP-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RANDY SCOTT SYROP,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 10, 2008)

Before TJOFLAT, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Appellant Randy Scott Syrop ("Syrop") appeals the revocation of his

probation and the sentence imposed by the district court. We affirm.

## I. BACKGROUND

In 2002, Syrop pleaded guilty to mail and wire fraud arising from a "pump and dump" scheme in which he willfully filed false documents with the Securities and Exchange Commission and disseminated false press releases in order to bolster a chosen stock's value. The scheme resulted in investor losses totaling almost seven million dollars. Nonetheless, because of his substantial cooperation with the Government, the district court sentenced Syrop only to five years' probation. Two conditions placed on Syrop were that he not "engag[e] in any employment related directly or indirectly to investments or securities business opportunities," DE 1 at 11, and that he "answer truthfully all inquiries by the probation officer," *id.* at 10. In November 2007, Syrop's probation officer, Ron Manganiello, filed a notice with the district court that Syrop had violated these conditions.

Syrop's primary employment during his probation was with Broadvision Group, an internet advertising company owned by John Grandinetti. Syrop consistently maintained that his only function was web marketing—specifically, selling banner advertisements. Manganiello received notice from several people that Syrop engaged in other sales activities. First, Brett Friedman sent a letter stating that he "met with Randy Syrop on approximately 5 occasions regarding

2

investing in Tube Media corporation." DE 16 at 2 (exh. 1). At one meeting, according to Friedman, Syrop and Grandinetti presented a sales pitch for the stock, "enticing [Friedman and two others] to buy stock in the company." *Id.* Friedman lost $160,000. *Id.* Second, Daniel Drapacz wrote that Syrop called him offering an investment opportunity in "Pyramid Records/TUBE Media Corporation." *Id.* at 3 (exh. 2). Syrop offered $50,000 in public shares, and $48,000 in restricted shares held in Syrop's mother's name. *Id.* Drapacz purchased the stock—the public shares over the Internet, and the private shares from Syrop's mother. *Id.* According to Drapacz, Syrop also solicited the 2004 sale of one-third of Broadvision to Drapacz and his cousin, Harry Bruner, for $650,000. *Id.*; *see also id.* at 12-18 (sales contract between Grandinetti and Bruner). When Bruner became dissatisfied with Broadvision's performance and threatened to contact the authorities, Syrop threatened him. *Id.* at 3 (exh. 2).

Based on these allegations, Manganiello filed a notice with the district court that Syrop had violated his probation conditions by engaging in employment related to investments and securities, and by lying to Manganiello by not telling him about those activities. A magistrate judge held a Federal Rule of Criminal Procedure 32.1(b)(1)(a) preliminary hearing in which Manganiello testified about the Friedman and Drapacz statements. *See generally* DE 23 (Transcript of Pretrial

3

Detention & Preliminary Hearing). Syrop presented rebuttal evidence, including a sales contract between Bruner and Grandinetti, and a civil complaint by Bruner against Grandinetti, which showed that Grandinetti, not Syrop, was responsible for the Broadvision sale. DE 16 at 12-18 (contract between Grandinetti and Bruner; Syrop not mentioned); *id.* at 5-11 (civil complaint by Bruner against Grandinetti; Syrop not mentioned).

The magistrate judge noted "inconsistencies" in the evidence—specifically, that the contract and civil complaint contradicted Drapacz's allegation that Syrop was involved in the Broadvision sale—but found "sufficient probable cause" to conclude that Syrop violated his probation conditions by engaging in investment-related employment and lying to his probation officer about that activity. DE 18 at 6. The magistrate judge referred the case to the district court for an evidentiary hearing with live witnesses to resolve the inconsistency and adopt or reject the recommendation. *Id.*

The district court held an evidentiary hearing in which similar evidence was presented, with the exception that Drapacz and Friedman testified live, rather than having their statements read. *See generally* DE 47 (Transcript of Probation Violation Proceedings). Friedman testified that Syrop invited him to a shareholder meeting for Tube Media Corporation. *Id.* at 10. He understood Syrop to be a

"consultant for the company." *Id.* at 19. After sitting through the meeting, Syrop took Friedman and another potential investor to a conference room, where Syrop presented a sales pitch for investment in The Tube. *Id.* at 10. Friedman testified that he then decided to invest in The Tube by purchasing public shares on the internet, and private shares from others through Syrop. *Id.* at 11, 24. The Tube failed, and Friedman lost over $160,000. *Id.* at 10. On cross examination, Friedman testified about the reasons for his continued investment in The Tube: Les Garland, a principal in major television networks MTV and VH1, was involved; The Tube had a television channel in millions of homes; and Friedman had made substantial gains on an earlier smaller investment in The Tube. *Id.* at 20-21. Nevertheless, despite deciding that The Tube was a legitimate business based on his own due diligence, Friedman felt in retrospect that it was a "pump and dump" scheme, and Syrop sought him out to convince him to invest in the company. *Id.* at 21, 23.

Drapacz also expounded his statement during live testimony. He testified that Syrop was fully involved in the sale of Broadvision, and that Syrop was Grandinetti's partner in Broadvision but could not own anything "on paper" because he was on probation. *Id.* at 34. Syrop's attorney sought to discredit Drapacz on cross-examination by noting that Drapacz is a convicted felon and that

the Broadvision contract and subsequent civil suit belied his accusation that Syrop sold Broadvision. *Id.* at 43-44, 48-49.

Syrop presented his own witnesses, including The Tube's and Broadvision's lawyer, who testified that he had no indication that Syrop held any kind of ownership interest in Broadvision, and Syrop did not have a consulting agreement with The Tube. *Id.* at 77-78.

After hearing the testimony and argument, the district court found that Syrop had violated his probation conditions. *Id.* at 99-100. The district court credited both Friedman and Drapacz, noting that both testified to Syrop promoting investment in The Tube while holding himself out as a consultant. *Id.* at 100. The district court found it irrelevant that the offerings were not a part of his formal employment with Broadvision; "The idea was that he shouldn't be involved in offering securities to people because of his prior involvement in a pump and dump scheme." *Id.* at 101. Syrop insisted that he "was just being polite in talking to people about [The Tube]," and "at no time did [he] care if anybody bought the stock or not." *Id.* at 102. Nonetheless, the district court found that Syrop engaged in securities-related employment and lied to his probation officer about it. The court calculated the Guidelines range as three to nine months' imprisonment, but sentenced Syrop to 24 months' imprisonment because the probation violation

6

repeated the original criminal acts. *Id.* at 105.

## II. STANDARDS OF REVIEW

"[T]his court generally reviews a district court's revocation of probation for an abuse of discretion." *United States v. Mitsven*, 452 F.3d 1264, 1265 (11th Cir. 2006). In reviewing a revocation proceeding, "[a] district court's findings of fact are binding on this court unless clearly erroneous." *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993) (quoting *United States v. Granderson*, 969 F.2d 980, 982 (11th Cir.1992)).

We review the reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

## III. ANALYSIS

The thrust of Syrop's argument is that the condition against "engaging in employment related to securities and investments" did not extend to Syrop's giving advice about investments to people or investing in securities himself. According to Syrop, the Government must present direct evidence that he gained a benefit from a transaction for that transaction to constitute "engaging in employment related to securities and investments." Furthermore, Syrop argues that because the advice he gave Friedman and the small role he played in the Broadvision sale to Bruner were not "employment," it was not a lie to tell his

7

probation officer his only employment was selling banner advertisements.

We reject Syrop's arguments.[1]  "In a probation revocation proceeding, all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation; evidence that would establish guilt beyond a reasonable doubt is not required." *United States v. O'Quinn*, 689 F.2d 1359, 1361 (11th Cir. 1982) (quoting *United States v. Rice*, 671 F.2d 455, 458 (11th Cir. 1982)).  We hold that the district court could easily conclude from the evidence presented that Syrop engaged in employment related to securities and investments at least twice.  First, the district court could reasonably conclude from Drapacz's testimony that Syrop was a shadow partner in Broadvision, directly involved in the sale that, on paper, was between Grandinetti and Bruner only.  Second, the district court could reasonably infer that Syrop stood to gain from Friedman's investment in The Tube, given that Syrop held himself out as a consultant and actively promoted the stock.  Moreover, because the district court could conclude that Syrop was engaged in activities beyond banner-advertising sales, the court could also reasonably conclude that Syrop lied to his probation officer when he stated that his only employment was

---

[1] Syrop also argues that it was error for the Government to fail to call Bruner to the stand because the magistrate judge's report and recommendation stated that "Friedman, Drapacz and Bruner . . . need to be personally present at any final evidentiary hearing."  DE 18 at 6.  We reject this argument; if Syrop wanted Bruner to testify, he could have called Bruner to the stand.

selling banner advertisements.

We also conclude that the two-year sentence was reasonable. To review a sentence, an appellate court "must first ensure that the district court committed no significant procedural error," and "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 128 S. Ct. at 597. Syrop first argues that the district court's sentence was procedurally unsound because it found that Syrop's first conviction was for a pump-and-dump scheme, when the conviction was only for causing false filings to be mailed. The relevant conduct for sentencing purposes extends far beyond the specific crime of which the defendant was convicted. *See* U.S.S.G. § 1B1.2 ("Relevant Conduct"). The district court concluded from the Presentence Investigation Report that Syrop's relevant conduct included a pump-and-dump scheme; that finding was not clearly erroneous. Moreover, we conclude that it was reasonable for the district court to exceed the nine-month upper bound recommended by the Guidelines. Recidivist conduct touches multiple 18 U.S.C. § 3553(a) sentencing factors: it affects"the nature and circumstances of the offense and the history and characteristics of the defendant"; it suggests a greater "seriousness of the offense"; and it shows a greater need "to promote respect for the law," "deter[] criminal conduct," and "to protect the public from further crimes of the defendant." Therefore, a 24-month

sentence was reasonable given the recidivist nature of Syrop's probation violation.

## IV. CONCLUSION

The district court did not abuse its discretion when it revoked Syrop's probation, and the 24-month sentence was reasonable.

**AFFIRMED**.